UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABESHA JEMAL (A-Number: 221-418-399),<br><br>              Petitioner,<br><br>    v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY,<br><br>              Respondent. | Case No.  2:26-cv-1187-TLN-JDP<br><br><br>FINDINGS AND RECOMMENDATIONS |

On May 31, 2025, petitioner Abesha Jemal entered the United States from Mexico and was detained by Border Patrol.  ECF No. 7-1 at 3.  Petitioner has been held in custody since that date.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, on the basis that his detention without a bond hearing violates the Fifth Amendment.  For the reasons below, I recommend that the petition be granted.

**Background**

Petitioner, a citizen of Ethiopia, entered the United States at the southern border on May 31, 2025, without being inspected, admitted, or paroled by an immigration officer.  ECF Nos. 1 at 2, 7-1 at 3.  At the time of his entry, under a presidential proclamation and associated informal guidance to DHS, the executive branch prevented petitioner from applying for either asylum or withholding of removal.  ECF No. 7-1 at 3; *see Refugee & Immigrant Ctr. for Educ. & Legal*

1

*Servs. v. Noem (RAICES I)*, 793 F. Supp. 3d 19, 38 (D.D.C. 2025), *aff'd sub nom*, *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin (RAICES II)*, __ F.4th __, 2026 WL 1110616, at *1 (D.C. Cir. Apr. 24, 2026); *see also* Presidential Proclamation No. 10888, Guaranteeing the States Protection Against Invasion, 90 Fed. Reg. 8,333, 8,334-35 (Jan. 20, 2025).  The proclamation and related guidance to DHS have since been enjoined "to the extent that they circumvent the INA's removal procedures and cast aside federal laws affording individuals the right to apply and be considered for asylum or withholding of removal protections."  *RAICES II*, 2026 WL 1110616, at *2 (affirming injunction); *see also Tabatabaeifar v. Scott*, No. CV-25-01238-PHX-GMS (MTM), 2025 WL 1397114, at *2 (D. Ariz. May 14, 2025) (enjoining removal).  The *RAICES I* injunction is stayed pending review.[1]

On June 1, 2025, a border patrol agent summarily ordered petitioner removed from the United States without any consideration of asylum, credible fear, or other protections afforded him by the INA or international law.  ECF No. 7-2 at 1.  Respondent has pointed to no other removal order for petitioner.  On July 15, 2025, petitioner was interviewed by a deportation officer and expressed a credible fear of being tortured in his home country.  ECF No. 7-1 at 6.  The deportation officer referred him to U.S. Citizenship and Immigration Services for an assessment under the Convention Against Torture ("CAT").  *Id.*  On July 28, 2025, an asylum officer determined that petitioner's testimony regarding past persecution in Ethiopia was "consistent, detailed, and plausible," found his account "credible," and concluded that "it is more likely than not that [he] will be tortured in Ethiopia" under the CAT.  ECF No. 7-3 at 2-3.  Pursuant to the proclamation and associated guidance, petitioner was not evaluated for asylum.  There is no information in the record regarding whether petitioner has ever been permitted to apply for asylum.

---

[1] The *RAICES I* injunction issued on July 2, 2025, and was stayed by the D.C. Circuit in *RAICES II* on July 11, 2025, pending appeal.  On April 24, 2026, the D.C. Circuit affirmed the injunction, but withheld issuance of the mandate until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc.  Order, *RAICES II*, No. 25-5243 (Apr. 24, 2026).  A joint status report filed by the parties on April 29, 2026, indicates that the government is "considering whether to seek further review of the panel decision."  Joint Status Report at 2, *RAICES I*, 1:25-cv-00306-RDM, ECF 82.

Respondent does not explain what happened in the next six months, but states that "[o]n March 4, 2026, an immigration judge ordered that Petitioner's [sic] removed from the United States." ECF No. 7 at 2. Respondent has provided neither a Notice to Appear nor any removal order that would supersede the summary removal order at ECF No. 7-2. Pro se petitioner suggests that some form of CAT relief was granted by the immigration judge, stating that the "Judge gave [him] removal to Uganda" instead of his home country. ECF No. 1 at 5. He states a concern regarding removal to Uganda: "I can't go to Uganda nor my country." ECF 1 at 5.

On March 18, 2026, petitioner, aided by immigration counsel, filed an appeal to the Board of Immigration Appeals. ECF No. 7-4 at 1. Petitioner has been in custody for over a year.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## Analysis

Petitioner claims that his prolonged detention absent a bond hearing violates his Fifth Amendment Due Process rights.[2] ECF No. 1 at 6, 9. Respondent argues that petitioner is an

---

[2] Petitioner also raises other grounds in the petition, related to his living conditions in detention, the medical problems he is facing, and the impact on his family. ECF No. 1 at 6-7. Petitioner may be able to pursue a standalone lawsuit under 28 U.S.C. § 1331 seeking injunctive relief to remedy medical care problems. *See Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) ("Plaintiffs' due process claims arise under the Constitution, and Plaintiffs invoked 28 U.S.C. § 1331, which provides subject matter jurisdiction irrespective of the accompanying habeas petition. Moreover, an implied cause of action exists for Plaintiffs to challenge allegedly

"applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), which states, "If the officer determines at the time of the [asylum] interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." ECF No. 7 at 2, 5. Respondent further argues that petitioner was subjected to "expedited removal" under section 1225(b)(1), and that the finding of a "credible fear of persecution" and transfer of petitioner to the "standard removal proceeding" still rendered petitioner subject to "mandatory detention during that standard removal proceeding." *Id.* at 3. I address the statutory framework before analyzing petitioner's due process claim. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008); *Solorzano-Ramirez v. Warden,* No. 1:26-cv-2540-DC-CSK, 2026 WL 1257256, at *2 (E.D. Cal. May 7, 2026).

I must determine whether petitioner's detention is mandated by section 1225(b)(1)(B)(ii). Under section 1225(b)(1), if an immigration officer determines that a noncitizen "who is arriving in the United States" is inadmissible, the officer "shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see also* 8 U.S.C. § 1158(a)(2) (mandating that any noncitizen arriving in U.S. may apply for asylum); *RAICES II*, 2026 WL 1110616, at *4 ("The INA . . . guarantees the right to apply for asylum."). If the noncitizen indicates a fear of persecution, the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(B). That referral and determination of "credible fear of persecution" must occur *before* an expedited removal order may be issued. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020) (An applicant for admission can "avoid expedited removal by claiming asylum.").

unconstitutional conditions of confinement."). Notably, as the Court of Appeals stated in *Pinson v. Carvajal*, "the Supreme Court has left open the key question of whether there are circumstances when a challenge to the conditions of confinement is properly brought in a petition for writ of habeas corpus." 69 F.4th 1059, 1075 (9th Cir. 2023) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 144-45 (2017) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement.")). At present, because petitioner has not demonstrated extreme conditions or medical neglect, this is not a case where a distinct claim for release based on conditions of confinement or medical neglect can be sustained.

In contrast, "[t]he Proclamation and Guidance . . . subject those individuals who have entered the country despite the entry ban to new summary removal procedures without the rights the INA provides to seek asylum or other removal protections." *RAICES II*, 2026 WL 1110616, at *1. Respondent's exhibits demonstrate that it explicitly processed petitioner for summary expedited removal under the proclamation and guidance. ECF Nos. 7-1 at 1, 6, 7-2, 7-3. Petitioner was "not permitted to apply for asylum" prior to the issuance of the summary removal order. *See RAICES II*, 2026 WL 1110616, at *6 (italics removed).

Respondent relies on section 1225(b)(1)(B)(ii) as the basis for petitioner's mandatory detention without a bond hearing. ECF No. 7 at 1, 4, 6, 7-9. That subsection authorizes the post-asylum-interview detention of applicants for admission so that the government may provide "further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). However, respondent never provided petitioner an asylum interview under 8 U.S.C. § 1225(b)(1)(B). Rather, respondent provided petitioner a narrower interview limited to CAT relief, and did so only two months after issuing the summary removal order. ECF No. 7-3. Further, respondent could not have detained petitioner to "consider" his "application for asylum," as, pursuant to the proclamation and guidance, it did not permit him to file one. Accordingly, I find that section 1225(b)(1)(B)(ii) does not mandate petitioner's detention in this matter.

Elsewhere in its answer, respondent points generally to its authority to detain "applicants for admission" under section 1225(b). ECF No. 7 at 2. Respondent indicates that it moved petitioner "to a standard removal proceeding . . . under 8 U.S.C. 1229a" and argues that he is still subject to mandatory detention under 1225(b). ECF No. 7 at 3. For the purpose of the due process analysis, I find that petitioner is being detained as an "applicant for admission" under section 1225(b). S*ee Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) ("[R]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention for applicants for admission until certain proceedings have concluded.").

While petitioner's detention may be mandated by statute, that does not resolve his claim

that his detention violates the Fifth Amendment.[3]  At present, there is no binding authority that squarely addresses petitioner's due process claim.  In *Zadvydas*, the Supreme Court addressed a challenge to prolonged detention in a different context—under 8 U.S.C. § 1231(a)(6)—and held:

> We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period.  After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence.

533 U.S. at 701 (internal quotation marks and citation omitted).

However, in *Demore v. Kim*, the Supreme Court rejected a due process challenge to section 1226(c)—which, like section 1225(b), mandates detention—and distinguished *Zadvydas* because, unlike indefinite detention pending removal under section 1231(a)(6), mandatory detention under section 1226(c) has a "definite termination point," i.e., the conclusion of removal proceedings.  538 U.S. 510, 529 (2003).  The Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  *Id*. at 531.

After *Demore*, the Court of Appeals held that detention under sections 1225(b), 1226(a), and 1226(c) has an implicit six-month limit, at which time the government must justify continued detention by clear and convincing evidence at a bond hearing.  *Rodriguez v. Robbins*, 804 F.3d 1060, 1078-85 (9th Cir. 2015).  But the Supreme Court reversed, finding that none of the statutory provisions can reasonably be read to limit detention to six months.  *Jennings*, 583 U.S. at 297-306.  As the Court of Appeals noted on remand, however, the Supreme Court "declined to

---

[3] As respondent notes, the Supreme Court held that a noncitizen detained shortly after unlawful entry "has only those rights regarding admission that Congress has provided by statute" and "the Due Process Clause provides nothing more."  *See* ECF No. 7 at 5 (quoting *Thuraissigiam*, 591 U.S. at 140).  However, "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States."  *Padilla v. U.S. Immigr. & Customs Enf't,* 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023).  Accordingly, "[w]hile *Thuraissigiam* limits an arriving noncitizen's due process rights in regard to admission, a petitioner may still assert a due process claim against prolonged mandatory detention without a bond hearing."  *Singh v. Noem*, No. 26-cv-0265-GPC-BLM, 2026 WL 206716, at *5 (S.D. Cal. Jan. 27, 2026).

6

reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018).

"In the wake of *Jennings*, district courts have grappled with how to address due process challenges to prolonged mandatory detention under § 1225(b)." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Nonetheless, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id*. (collecting cases) (internal quotation marks omitted).

Accordingly, I will evaluate petitioner's year-long detention without a bond hearing under the Due Process Clause, which protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to [the Fifth Amendment's] constitutional protection."); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025). "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." *Tinoco v. Noem*, No. 1:25-cv-01762-DC-JDP (HC), 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing *Zadvydas*, 533 U.S. at 690).

"Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b)."[4] *Salamakhin v. Noem*, No. CV-26-00330, 2026 WL 1250296, at *5 (D. Ariz. May 6,

---

[4] *See, e.g.*, *Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, 2026 WL 797694, at *9-11 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test, deeming it a "truncated" version of the *Banda* test) (citing *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); *Akmal v. Warden of Cal. City Det.*, No. 1:25-cv-01921-DC-DMC (HC), 2026 WL 657606 (E.D. Cal. Mar.

2026).  The three main tests are: (1) the general due process assessment under *Mathews*, 424 U.S. 319; (2) the six-factor test announced in *Banda*, 385 F. Supp. 3d at 1118; and (3) the test announced in *Lopez*, 631 F. Supp. 3d at 879, where the court determined whether prolonged mandatory detention under section 1226(c) violates the Due Process Clause by considering three factors: "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government."[5]

"While the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case."[6] *Banda*, 385 F. Supp. 3d at 1118.  Similarly, the two factors employed in *Banda* but not *Lopez*—the conditions of detention and the likelihood that the removal proceedings will result in a final order of removal—"are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing." *Lopez*, 631 F. Supp. 3d at 879. Moreover, "[t]hough *Lopez* concerned a due process challenge to mandatory detention under § 1226(c), the factors enumerated there are, in essence, a truncated version of the factors enumerated in *Banda*, which concerned mandatory detention under § 1225(b)(1)." *Doe v.*

---

9, 2026), *report and recommendation adopted*, 2026 WL 825750 (E.D. Cal. Mar. 25, 2026) (applying *Lopez*); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-0098-SAB, 2025 WL 2099343, at *6 n.6 (E.D. Cal. July 25, 2025) (applying the *Lopez* test where both parties only addressed the *Mathews* test in their briefing); *Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 WL 632663, at *2-5 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 WL 851289, at *2-4 (S.D. Ind. Mar. 27, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 WL 143150, at *4-5 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

[5] The *Lopez* test utilizes three factors from the *Banda* test. *Lopez*, 631 F. Supp. 3d at 877-79.  In *Banda*, to determine whether prolonged mandatory detention under section 1225(b) violates the Due Process Clause, the court also considered "the conditions of detention" and "the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A.*, 358 F. Supp. 3d at 858-59).

[6] If I analyzed petitioner's claim under *Mathews*, I still would conclude that petitioner is entitled to relief because: (1) he has a significant private interest that is affected by detention; (2) the risk of an erroneous deprivation is high without a bond hearing; and (3) the government's interest in withholding a bond hearing is relatively low.  *See* 424 U.S. at 335.

*Andrews*, No. 1:25-cv-0333-JLT-HBK, 2026 WL 797694, at *10 (E.D. Cal. Mar. 23, 2026).  I have previously used the *Lopez* test to determine whether due process requires a bond hearing for a noncitizen detained under section 1225(b) and will do so here.  *See Hasan M.D. v. Warden of the Cal. City Det. Ctr.*, No. 2:26-cv-0282-DJC-JDP, 2026 WL 972658, at *1 (April 10, 2026), *report and recommendation adopted*, 2026 WL 1051852 (E.D. Cal. Apr. 17, 2026).

I consider each factor in turn.

## I.    Total Length of Detention

The first factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118.  "It is important to bear in mind the context:  The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Courts have found that this factor weighs in the petitioner's favor where detention has lasted at least one year.  *See, e.g.*, *Baishymyrov v. Warden*, No. 1:25-cv-1658-DMC, 2026 WL 145644, at *7 (E.D. Cal. Jan. 20, 2026).  "In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, No. 18-cv-5321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (collecting cases) (cleaned up).  Even shorter periods of time have been considered prolonged. *Haidari v. ICE.*, No. 2:26-cv-00039-TL, 2026 WL 764689, at *3 (W.D. Wash. Mar. 18, 2026) (detention over six months); *Amando v. DOJ*, No. 25CV2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (detention over seven months);  *Gurung v. Larose*, No. 26V920-LL-MSB, 2026 WL 776841, at *4 (S.D. Cal. Mar. 19, 2026) (eight-month detention).

As petitioner has been detained a year without a bond hearing, this factor weighs squarely in his favor.

## II.    Likely Duration of Future Detention

Second, the court must determine "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings— including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).

9

Petitioner's immigration case has already taken a year.  Respondent has provided no information regarding why it took six months for petitioner to receive a hearing before an immigration judge.  Petitioner indicates that he received some kind of relief from removal to his home country under CAT, and respondent only mentions the humanitarian claim in passing, noting that "[p]etitioner's detention will end when he is either removed from the United States or released because his relief from removal was granted."  ECF Nos. 1 at 5, 7 at 6, 7-3.

The pending BIA appeal warrants weighing this factor in petitioner's favor.  *See Arido-Sorro v. Garland*, No. 23-cv-0842-PHX-JAT, 2024 WL 4393264, at *4 (D. Ariz. Sept. 5, 2024), *report and recommendation adopted*, 2024 WL 4834413 (D. Ariz. Nov. 20, 2024) ("Courts have recognized that the possibility of prolonged appeals weighs in favor of finding that continued detention without a bond hearing violates due process."); *Loba L.M. v. Andrews*, No. 1:25-cv-00611-JLT-SAB-HC, 2025 WL 2939178, at *6 (E.D. Cal. Oct. 16, 2025), *report and recommendation adopted*, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025) (finding that "[a]lthough future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible remand to the immigration court for further proceedings or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner"); *Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-cv-01807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026) (finding this factor weighed in favor of the petitioner who had appealed the Immigration Judge's decision to the BIA).

BIA appeals may take a substantial period.  "Courts have found that pending administrative and possible Ninth Circuit appeals can be 'sufficiently lengthy' such that it favors Petitioner's ability to be heard."  *Kaur v. Lyons*, No. CV-26-00217-PHX-KML (ASB), 2026 WL 967846, at *5 (D. Ariz. Mar. 24, 2026), *report and recommendation adopted*, 2026 WL 963792 (D. Ariz. Apr. 9, 2026); *see also Abdul-Samed*, 2025 WL 2099343, at *7 (citing *German Santos v. Warden*, 965 F.3d 203, 211 (3d Cir. 2020)); *Arechiga v. Archambeault*, No. 2:23-CV-00600-CDS-VCF, 2023 WL 5207589, at *4 (D. Nev. Aug. 11, 2023) ("It is anyone's guess how long it will take the BIA to reconsider [the] petition . . . or how long subsequent appeals of that decision

might take.").

The fact that Petitioner is at the beginning of his appeals process is instructive. *See Banda*, 385 F. Supp. 3d at 1119 ("If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer."). Accordingly, the potential length of detention during petitioner's administrative and possible Ninth Circuit appeals process weighs in favor of granting petitioner a bond hearing.

In addition, the *RAICES* class action may delay this matter. Given petitioner's inclusion in the class, and the possibility that he will receive relief in the *RAICES* litigation, it may take years for him to obtain the procedural protections that Congress has provided in statute. The class has requested an injunction "prohibiting [respondent] from relying on any removal orders issued to noncitizens pursuant to the Proclamation." Mot. For Prelim. Inj., *RAICES I*, 2025 WL 1588136 (Feb. 19, 2025). It appears that respondent is relying on the summary repatriation order it issued pursuant to the proclamation and guidance. ECF No. 7-2. Should this summary repatriation order be vacated pursuant to the class action, petitioner may be back at square one in his immigration proceedings.

Accordingly, I find that the second factor weighs in favor of petitioner.

**III.    Delays in Removal Proceedings Caused by Petitioner and Respondent**

Lastly, the court must consider the nature and extent of delays caused by petitioner and the government. There is limited information in the record regarding the immigration court process. Petitioner was detained on May 31, 2025. Respondent brought him before an immigration judge in March 2026. Neither party has explained the cause of this delay. On March 17, 2026, petitioner appealed the March 4, 2026 immigration court order to the BIA. ECF Nos. 1 at 4-5, 7-4 at 1. Petitioner then finalized his habeas petition a week later, on March 25, 2026 (ECF No. 1 at 8), filing it on March 30, 2026. As I cannot determine the reason for the delay in removal proceedings, I find that this factor is neutral.

Two of the three factors, including the total length of detention, "which is the most important factor," *Banda*, 385 F. Supp. 3d at 1118, and the likely duration of future detention weigh strongly in petitioner's favor. Accordingly, a weighing of the *Lopez* factors supports a

11

finding that petitioner's detention, absent a bond hearing, violates his Fifth Amendment Due Process rights. Given this finding, I must determine the appropriate relief.

Petitioner requests release. Respondent does not address the issue. I recommend that petitioner receive a prompt bond hearing before a neutral adjudicator. *See Qazi v. Albarran*, No. 2:25-CV-02791-TLN-CSK, 2025 WL 3033713, at *6 (E.D. Cal. Oct. 10, 2025). At the hearing, respondent must bear the burden of showing by clear and convincing evidence that petitioner presents a flight risk or danger to the community. *Martinez v. Clark*, 124 F.4th 775, 780, 785 (9th Cir. 2024); *see Lopez*, 631 F. Supp. at 882 n.9 (collecting cases). Petitioner and his immigration counsel must receive notice prior to the bond hearing. 8 C.F.R. § 103.8(c)(1); 8 C.F.R. § 292.5(a); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 357-58 (S.D.N.Y. June 14, 2019).

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner (A-Number: 221-418-399) be provided a bond hearing before a neutral adjudicator within five days of the date of the court's order. Within 24 hours of the filing of the court's order:

Respondent shall personally serve petitioner with this order and file proof of such service on the docket.

Respondent shall serve petitioner's immigration counsel, named at ECF No. 7-4 as Million Feyyisa Lenjiso, Million Feyyisa Law Firm, PLLC, P.O. Box 88342, Seattle, WA 98138, as well as any other immigration attorney who has appeared for petitioner in these proceedings, with this order and file proof of such service on the docket.

Service on immigration counsel shall be accomplished in such a way as to provide notice prior to the bond hearing. At this bond hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3. Respondent be ordered to file a status report, within five days of the bond hearing,

regarding the outcome.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    June 2, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

13